# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

KARRI DALTON,
*as the personal representative of the Estate of Nikki Bascom,*
*And Next Friend to M.B., a minor Child, and*
*A.C., a minor child,*
        Plaintiff,

vs.
                             Case No. 2:17-cv-01143-WJ-GJF

TOWN OF SILVER CITY, GRANT COUNTY,
ED REYNOLDS, RICKY VILLALOBOS,
THE ESTATE OF MARCELLO CONTRERAS,
DEPUTY JACOB VILLEGAS, SGT. FRANK GOMEZ,
AND DETECTIVE ADAM ARELLANO,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendants Grant County's, Deputy Jacob Villegas', Sgt. Frank Gomez's, and Deputy Adam Arellano's (the "County Defendants'") Motion for Summary Judgment, filed on April 13, 2018 (**Doc. 29**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

These claims arise out of Nikki Bascom's murder by her ex-boyfriend, Silver City Police Department Captain Marcello Contreras. Grant County Sherriff's Department ("GCSD") officers Sgt. Gomez, Deputy Villegas and Detective Arellano were investigating certain domestic disturbance claims against him by victims Nikki Bascom and Dr. Darrick Nelson. On

April 21, 2016, Captain Contreras shot and killed Ms. Bascom, and then himself. Plaintiff's claims arise out of her allegations that the Defendants failed to protect Ms. Bascom and otherwise violated Ms. Bascom's constitutional rights.

On behalf of Ms. Bascom's estate and her minor children, Plaintiff filed this case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging the following relevant claims against the County Defendants:

> Count III: Fourth Amendment Unlawful Entry against the Estate of Contreras and Deputies Gomez and Villegas, and Grant County;
> Count V: Fourth Amendment Illegal Entry against Arellano and Grant County;
> Count VII: Equal Protection against Defendants Arellano, Gomez and Villegas;
> Count XI: Negligence Resulting in Battery; and
> Count XII: Deprivation of Statutory Rights Resulting in Wrongful Death.

Defendants filed a motion for summary judgment on the above claims and asserted qualified immunity on the constitutional violation claims (Counts III, V, and VII).

## LEGAL STANDARD FOR COUNTS III, V, and VII

The individual County Defendants have asserted the defense of qualified immunity for Counts III, V, and VII, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation.

*Id.* If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.*

However, "[t]o meet the heavy, two-part burden necessary to overcome a qualified-immunity defense, plaintiffs must allege facts sufficient to show a constitutional violation, and those facts must find support from admissible evidence in the record. [The Court] construe[s] the facts in the light most favorable to the plaintiff as the non-movant. But [the Court] need not make unreasonable inferences or adopt one party's version of the facts if the record doesn't support it." *Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas*, 864 F.3d 1154, 1173–74 (10th Cir. 2017), *cert. dismissed sub nom. Bd. of Cty. Comm'rs of Johnson Cty., Kansas v. Harte*, 138 S. Ct. 576, 199 L. Ed. 2d 452 (2018) (internal citations and quotations omitted).

To be clear, "[i]n determining whether the plaintiff meets this burden, [the Court] ordinarily accept[s] the plaintiff's version of the facts—that is, the facts alleged." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quotation marks omitted). However, Plaintiff's versions of the facts must find support in the record. *Id.*

## FACTS FOR QUALIFIED IMMUNITY ANALYSIS[1]

The Silver City Police Department ("SCPD"), not associated with the Grant County Defendants, was called out on March 9, 2016 to a domestic disturbance between Ms. Bascom and Cpt. Contreras. Ms. Bascom's son reported that Cpt. Contreras had threatened suicide. Although SCPD apparently made no record of the incident, Dr. Darrick Nelson, Ms. Bascom's boss, told Sgt. Gomez and Deputy Villegas on April 19 that after the incident saw "alarming bruises" on her. **Doc. 49-5, p. 7 of 19.**

---

[1] The facts as presented here are Plaintiff's version of the facts which have been properly supported in the record. For brevity, the Court does not repeat Plaintiff's facts that are otherwise addressed below. Some facts are not relevant, because it is unclear whether the County Defendants were aware of them. However, Plaintiff's Additional Fact C was not supported by any citation to the record, and therefore is ignored.

However, there is no evidence in the record that Ms. Bascom ever told Sgt. Gomez or Deputy Villegas that Cpt. Contreras battered her. *See* **Lapel Video of Deputy Villegas**.

Sometime after his threatened suicide, Cpt. Contreras apparently moved out of their shared residence. Ms. Bascom told the County Defendants that he moved out in early March, but Cpt. Contreras told them he still lived there.[2]

On April 21, 2016 Ms. Bascom reported to the SCPD that Cpt. Contreras had (1) cut her off to stop her while driving and forced her to the side of the road; (2) he was on duty and in uniform, and (3) Cpt. Contreras accused her of "fucking her boyfriend" and ripped the phone from her hand. SCPD apparently did not document this incident.

The County Defendants knew Cpt. Contreras, and Det. Arellano had previously worked with Cpt. Contreras. From the lapel video, it was clear they were on friendly terms.

Cpt. Contreras had, at various times, confronted Dr. Nelson, including at Dr. Nelson's home and outside of a Walgreens store. He accused Dr. Nelson of having an affair with Ms. Bascom. Dr. Nelson alleged that Cpt. Contreras threatened him, including putting his hand on his firearm.

On the morning of April 21, 2016, Ms. Bascom reported to SCPD that while driving Cpt. Contreras had cut her off and stop her, he was on duty and in uniform, and he accused her of "fucking her boyfriend" and ripped her phone from her hand. She apparently only told Sgt. Gomez and Deputy Villegas that Cpt. Contreras had stopped her. Sgt. Gomez, in deposition testimony, stated that an officer can stop a relative.

Later on April 21, Ms. Bascom called the County Defendants out to her house. She believed Cpt. Contreras was following her to her home, and she wanted Cpt. Contreras out of her home. Sgt. Gomez and Deputy Villegas responded. Chief Reynolds of the SCPD, Cpt.

---

[2] As explained below, the Court need not accept Plaintiff's version of facts that are contradictory to the lapel video.

Contreras' boss, had already met Cpt. Contreras at the home and had placed him on administrative leave, but had already left when Sgt. Gomez and Deputy Villegas arrived

When Sgt. Gomez and Deputy Villegas arrived, both Cpt. Contreras and Ms. Bascom were at the house. They first talked to Cpt. Contreras. He stated that he lived at the house but acknowledged that Ms. Bascom didn't want him there. However, he stated that the home was owned by Ms. Bascom's father.

They then talked to Ms. Bascom separately. They did not ask her about her previous reports. She told them that Cpt. Contreras had stopped her earlier, but apparently not that he had taken her phone. Sgt. Gomez told Ms. Bascom to ask for the County Defendants when she called 911, because GSCD was handling her reports.

All three individual County Defendants testified that it was Grant County policy that once a person establishes residency by staying in the dwelling for thirty days, the owner of the residence cannot ask the person to leave unless civilly evicted. Cpt. Contreras knew this policy. Based on this policy, the County Defendants told Ms. Bascom it was legal for Cpt. Contreras to be in her home, and they could not remove him.

Sgt. Gomez and Deputy Villegas counseled her to go to a shelter, El Refugio. They stated that the shelter could aid her in preparing forms for a restraining order. However, they did not offer to get her an emergency restraining order or offer to escort her to the shelter.

After this encounter, Sgt. Gomez apparently contacted SCPD. Chief Reynolds of SCPD testified and identified on a call log a conversation with Sgt. Gomez.

Ms. Bascom went to the shelter. She called 911, and Det. Arellano was dispatched to the shelter at the beginning of his shift. Ms. Bascom believed that Cpt. Contreras was following her there or would be at the shelter. Det. Arellano stood the entire time he spoke to Plaintiff, which

was against training. At the shelter, she recounted much of what had already been reported to either SCPD or other County Defendants. For example, she told Det. Arellano that Cpt. Contreras had stopped her and taken her phone. She told him that she had wanted county officers at her house, because she was afraid. She stated that he refuses to leave her house, and that they had lived together for three years. She stated that they shared a residence, but also stated that she had the locks changed at the beginning of March and that he didn't have a key. Det. Arellano told her that because he established residency, they couldn't make him leave, but that she could get a restraining order to make him leave.

Det. Arellano confirmed that there was no new incident for him to act on, and that everything had already been reported. Det. Arellano apparently did nothing to ensure that Cpt. Contreras was investigated or that he was arrested.

After Det. Arellano left, the victim's advocate, who was present during the meeting, apologized for his demeanor. Ms. Bascom left the shelter to get her son and her belongings. However, it appears that the County Defendants were not aware that she left the shelter.

At shift change, Sgt. Gomez briefed Sgt. Yost that Cpt. Contreras had either assaulted or harassed Dr. Nelson, that either Sgt. Gomez or Deputy Villegas was going to do a report on the incident, and that either Sgt. Gomez or Deputy Villegas was going to seek the district attorney's input on any charges against Cpt. Contreras. He also stated that he had issued a criminal trespass warning to Cpt. Contreras for Dr. Nelson's house, and that he had advised Ms. Bascom to go to the shelter.

After she left, Dr. Nelson called to report that he had seen Cpt. Contreras near his home. Sgt. Yost responded and patrolled around Dr. Nelson's house. Around 4:05 p.m. Sgt. Yost saw Cpt. Contreras' truck and followed him to prevent him from further harassing Dr. Nelson. Sgt.

Yost was not aware that Cpt. Contreras had threatened suicide previously, that he had previously threatened Dr. Nelson, or that he had been entering Ms. Bascom's home without her permission. Sgt. Yost believed he could not stop Cpt. Contreras because he did not have probable cause, and there was no warrant out for Cpt. Contreras' arrest. He stopped following Cpt. Contreras after about four or five minutes.

Cpt. Contreras pulled up behind Ms. Bascom and her friend, who were in separate cars, outside the friend's house. Ms. Bascom's children were in her friend's car, and she screamed at her friend to leave. Cpt. Contreras then shot her and himself.

## DISCUSSION

### I.  Count VII: Equal Protection.

Plaintiff alleges that Det. Arellano, Sgt. Gomez, and Deputy Villegas violated her Equal Protection rights under the Fourteenth Amendment by treating her differently as a domestic violence victim *in a relationship with an officer* as compared to similarly situated domestic violence victims.

County Defendants moved for summary judgment on the Equal Protection claim (Count VII) and asserted qualified immunity. Their sole argument is that the they did not treat her differently from similarly situated domestic violence victims, because they did not have probable cause to arrest Cpt. Contreras. They also argue that they were otherwise investigating the claims when Ms. Bascom was murdered. For those same reasons, Defendants also argue that the law was not clearly established that they were required to arrest Cpt. Contreras under these circumstances.

Initially, the Court notes that County Defendants failed to identify any federal law on equal protection. They perfunctorily raised qualified immunity. Plaintiff nevertheless identified

7

the appropriate standard. When qualified immunity is asserted, Plaintiff bears the burden to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. Although the Court is reticent to advocate on behalf of County Defendants, the Court finds that the Tenth Circuit would likely require the Court to consider these two prongs of qualified immunity anyway. *See Cox v. Glanz*, 800 F.3d 1231, 1244 (10th Cir. 2015).

### A. <u>General Law on Equal Protection</u>.

"The equal protection clause provides that '[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 659 (10th Cir. 2006) (quoting U.S. Const. amend. XIV, § 1). "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Id.* In other words, states "must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997), *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017).

Although there is no fundamental constitutional right to police protection, the failure to equally "provide police protection is subject to the equal protection clause under [S]ection 1983." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988), *cited in Eckert v. Town of Silverthorne*, 25 Fed. Appx 679, 684 (10th Cir. 2001) (unpublished) ("There is no general constitution right to police protection, but if the state provides police protection it is prohibited from irrational discrimination in providing such protection."). The Tenth Circuit has also applied the Equal Protection clause to "failure to investigate" claims. *See Maxey v. Banks*, 26 F. App'x 805, 808 (10th Cir. 2001) (unpublished).

Thus, the Tenth Circuit has twice applied equal protection to claims that domestic violence victims, or sub-classes of domestic violence victims, were treated disparately from

similarly situated assault or domestic violence victims. *See Watson*, 857 F.2d at 693 (applied equal protection to class of domestic violence victims treated disparately form similarly situated assault victims)*; Price-Cornelison v. Brooks*, 524 F.3d 1103, 1113 (10th Cir. 2008) (applied equal protection to lesbian domestic violence victims as compared to similarly situated domestic violence victim).

Plaintiff does not specify whether she proceeds under a class-based or class-of-one theory. Because Plaintiff in fact *argues* a traditional class-based analysis, the Court will not address a class-of-one theory, in which she would otherwise bear a heightened burden.

**B.    First Prong of Qualified Immunity: Plaintiff's Burden to show Violation of Equal Protection.**

"In order to assert a viable equal protection claim, plaintiffs must [show] that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (same), *cited in Jensen v. Garden*, No. 18-4048, 2018 WL 5099601, at *3 (10th Cir. Oct. 19, 2018).

Plaintiff also has the burden of showing discriminatory intent. *Watson,* 857 F.2d at 694. Specifically, Plaintiff must demonstrate that Ms. Bascom's status as a domestic violence victim whose assailant was an officer was a motivating factor in the decision to treat her differently. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 696 (10th Cir. 1988). Although "[t]he discriminatory purpose need not be the only purpose, ... it must be a motivating factor in the decision." *Villanueva v. Carere,* 85 F.3d 481, 485 (10th Cir.1996). Thus, to survive summary judgment, Plaintiff must set forth specific facts showing that her status as a domestic violence victim whose perpetrator is an officer was a motivating factor in the Defendants' alleged failure

to properly investigate or provide police protection.  *See, e.g., Maxey v. Banks*, 26 F. App'x 805, 808 (10th Cir. 2001); *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996) (stating that it is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor).

If Plaintiff makes the above showing, she must then demonstrate that the alleged discrimination bears no rational relationship to a legitimate government end.  *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008); *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (rational basis test applied to equal protection claim where no fundamental right at issue and plaintiff was not in a suspect class).

Viewing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff put forth facts establishing overcoming qualified immunity as to Sgt. Gomez, but not as to Deputy Villegas and Det. Arellano.

1.      <u>Plaintiff carried her burden in asserting a constitutional violation against Sgt. Gomez</u>.  Plaintiff alleges that Sgt. Gomez treated her unequally and failed to investigate or failed to intervene and/or arrest Cpt. Contreras, because Cpt. Contreras was a fellow officer.  She alleges, for example, that instead of arresting or detaining Cpt. Contreras, Sgt. Gomez simply recommended that she fill out form for a restraining order at the shelter.

To support her equal protection claim, Plaintiff points to deposition testimony by Sgt. Gomez where he admitted to referring the claims by Dr. Nelson to the district attorney (rather than arresting Cpt. Contreras), because the alleged assailant is an officer.   In deposition testimony, Sgt. Gomez testified:

> Q.      And in this particular incident, why did you think it warranted further review?

A. **There was a Silver City police officer involved.** And the nature of the call that came, we felt better that – I was more comfortable going to the district attorney's office for their review.

**Deft's Ex. B, p. 11** (emphasis added).

Sgt. Gomez also apparently believed that police officers could stop persons with whom they are in a relationship while on duty. **Deft's Ex. B, p. 21.** Sgt. Gomez's comments to Cpt. Contreras also indicated that he was treating this case differently from others because the alleged perpetrator was an officer, or was giving preferential treatment to Cpt. Contreras. While investigating the claims, he told Cpt. Contreras "he would rather be drinking a cold one or something." He also told him he "fucking I hate to get involved in this though"… and "we're going to just write this up" and "we're not going to put this over the air dude, or nothing like that", in order to avoid embarrassment. And he said "it's sad when a situation like that happens, but – especially from one officer to another, investigating it." And he told Cpt. Contreras there was "nothing there." *See generally* **Defendant's Ex. G.**

Under the specific facts of this case, this evidence supports Plaintiff's claim that Sgt. Gomez was giving Cpt. Contreras preferential treatment in this matter.

Moreover, there were a number of incidents in this case, reported to SCPD or Grant County, which if investigated in the normal course likely would have established probable cause to arrest Cpt. Contreras for battery or assault, harassment, or stalking. For example, Sgt. Gomez had heard that after the March 9th incident, Ms. Bascom had bruises. He also knew that earlier on April 21, Cpt. Contreras stopped Ms. Bascom. Had he inquired further, he would have learned that Cpt. Contreras pulled her over and drove her off the road and took her cell phone from her hand. He also would have found out what caused her bruises. Finally, he knew that Ms. Bascom was afraid and had he asked why, he likely would have found out allegations that

supported claims of assault, battery, harassment, and stalking. Had he inquired further, he would have likely found sufficient probable cause to arrest Cpt. Contreras.

In contrast, Plaintiff has also presented evidence that Sgt. Gomez has in the past investigated domestic violence matters more extensively in other similar circumstances. *See* **Deft's Ex. O**, p 6-11. Based on his comments above, his reason for not inquiring further was likely the fact that Cpt. Contreras was an officer.

To be clear, a botched investigation does not, by itself, constitute an equal protection claim. However, paired with Sgt. Gomez's discriminatory comments and the evidence above, Plaintiff has sufficiently supported her allegations that Sgt. Gomez violated her equal protection rights.

Defendant's sole argument in response is that there was insufficient evidence for probable cause. But that misses the point of Plaintiff's argument. Plaintiff argues that – had Sgt. Gomez investigated the facts and circumstances of the case - there would have been probable cause. Moreover, she argues that Sgt. Gomez could have protected her in other ways. The Court agrees.

2. <u>Plaintiff failed to carry her burden as to Deputy Villegas and Detective Arellano.</u> Plaintiff has not presented any such direct evidence of discriminatory intent on behalf of Det. Arellano or Deputy Villegas. Therefore, Plaintiff has the threshold burden of producing examples of cases where Defendants treated similarly situated domestic violence victims differently. *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998) ("plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."); *see also Ryan v. City of Detroit, MI*, 698 F. App'x 272, 281 (6th Cir. 2017) (to satisfy burden that defendant treated her differently from similarly situated persons, Plaintiff

produced case files where defendant personally responded to domestic violence complaints by requesting an arrest warrant or by arresting the assailant). "Often, an equal protection plaintiff will be able to show intentional discrimination only by circumstantial evidence, usually in the form of an inference of discrimination arising from the fact that his or her adverse treatment was such a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 689 (10th Cir. 2012).[3]

To satisfy her burden, Plaintiff appears to point to the County Defendants' (1) failure to follow state law; (2) failure to follow department policy; (3) examples of where the defendants treated similarly situated victims differently. The Court concludes that Plaintiff has not carried her burden to show that Deputy Villegas or Det. Arellano treated Ms. Bascom differently compared to *similarly situated* domestic violence victims. In part, that's because the evidence presented did not include victims who were similarly situated to Ms. Bascom.[4]

Plaintiff presents comparable cases in which the County Defendants *arrested* at the scene of a domestic disturbance assailants that committed battery, rather forwarding the matter to the District Attorney. *See* **Deft. Ex. O.** First, Plaintiff presents one 'comparable' domestic violence case in which Det. Arellano was called out to an alleged battery. He received a report from the victim that suspect had battered her that night by grabbing her, throwing her to the ground, and pushing her head into the ground. He searched for the suspect and found him. The suspect was apparently arrested. *See* **Deft's Ex. O, p. 1.**

---

[3] Plaintiff does not assert a *Monell* claim against Grant County. Therefore, Plaintiff is not *required* to make the specific showing of a custom or policy through statistical evidence, as in *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 696 (10th Cir. 1988). . Rather, she must simply show that she was treated dissimilarly by the individual defendants from similarly situated domestic violence victims.

[4] Initially, Plaintiff appears to have accepted Deputy Villegas' allegation that he was pursuing an arrest warrant for Cpt. Contreras with the DA when Ms. Bascom was killed.

That was not the situation here for Det. Arellano. He was not called out to the scene of an alleged battery. He was called out to the shelter, El Refugio, because Ms. Bascom thought that Cpt. Contreras was following her there. He asked whether there was anything new to report to him that was not already reported to other officers, and she confirmed there was none. Therefore, there was no evidence before him that any crime had recently occurred or that there was any danger to the victim. Det. Arellano counseled Plaintiff to work with El Refugio to complete the domestic violence order paperwork and said it would hopefully be served by the County Defendants that day. There was apparently nothing new for him to act on. In that situation, Plaintiff did not present any evidence on what Det. Arellano does where other officers were apparently already working on the case, and there was no current allegation of battery.

Similarly, Plaintiff presents one "comparable" case involving Deputy Villegas. In that case, Deputy Villegas was called out and observed glass on the ground from a window that had recently been broken, and clothes thrown about in the backyard. The victim stated that the defendant showed up at her house, had a gun with him and was walking around with it. He pointed the gun at her and stated "I am going to kill you." He slapped her multiple times, and hit the dog with the gun. Therefore, Deputy Villegas was called out to the scene of a battery. Even in that case, Deputy Villegas sought the input of the district attorney prior to seeking an arrest warrant. *See* **Doc. 49-15, Ex. O, p. 11** ("I, Deputy Villegas, went to speak with Assistant District Attorney [], in reference to this incident. ADA [] approved the following charges.").

That was not at all like the situation here. On April 21, Deputy Villegas was called out because Ms. Bascom did not want Cpt. Contreras in her house and she did not feel safe alone with him. In response, Sgt. Gomez and Deputy Villegas counseled her to go a shelter, El Refugio, where they could assist her in filing paperwork for a restraining order. Plaintiff did not

report to Deputy Villegas that Cpt. Contreras had previously assaulted her and left bruises, or that he had taken her phone. However, as in the comparable case, Deputy Villegas went to seek the input of the district attorney.

Plaintiff alleges that in cases where the accused is not an officer, the defendants patiently interviewed victims and witnesses, arrested domestic abusers on site, pursued arrest warrants when needed, escorted victims to shelter, and thoroughly documented the investigation. In the only 'comparable' cases she presented, however, the warrants reflect the victim reported a battery, the officers personally observed or received evidence "at the scene" of the battery, and there were no other agencies (or officers) with a competing claim to jurisdiction. To the extent she argues the investigation into Dr. Nelson should have prompted them to investigate her safety, Plaintiff presented no comparable cases on this point. Therefore, Plaintiff has not presented any evidence of what these defendants would do in a situation similar to Ms. Bascom's case.

Moreover, Plaintiff never presented any cases on how the County Defendants treated cases in which SCPD was already apparently investigating. Thus, it is unclear whether their apparent failure to follow up or investigate was because the alleged perpetrator was an officer, or because SCPD was already investigating.

Plaintiff next appears to argue that County Defendants' alleged deviation from policy and law supports an inference that they did so because of a discriminatory purpose. Some courts have provided that deviation from policy *may* be evidence of discriminatory intent, but not dispositive. *See, e.g., Ryan v. City of Detroit, MI*, 698 F. App'x 272, 281 (6th Cir. 2017) ("In this case, Falk's deviation from policy does not necessarily show that he intended to discriminate against Katie because she was a domestic abuse victim whose perpetrator was an officer."); *Soto*

*v. Flores*, 103 F.3d 1056, 1067 (1st Cir. 1997). Plaintiff has not identified any such law in the Tenth Circuit.

Here, Plaintiff argues that the individual County Defendants violated state law by, for example, violating their duty to investigate. Under these circumstances, the Court finds that any deviation from the law or policy here is not sufficient, by itself, to satisfy Plaintiff's burden that Deputy Villegas and Det. Arellano had a discriminatory purpose.

Whether or not Deputy Villegas or Det. Arellano failed in giving Ms. Bascom adequate police protection, Defendants have given no comparable cases of *similarly situated* victims that show their treatment of Ms. Bascom was different from victims whose perpetrator was not a police officer. Without this comparison, the violations of law or department policy – if any – are not so great to infer, by themselves, that the County Defendants failed in their job based on discriminatory intent against Ms. Bascom. Therefore, unlike with Sgt. Gomez, there is no evidence for these two defendants of any discriminatory intent.

3. <u>Rational Relationship.</u> Once Plaintiff makes her threshold burden of discriminatory intent, she must show that the discrimination bears no rational relationship to any legitimate government end. The Court cannot find any rational basis for an *outside law enforcement agency* to discriminate against domestic violence victims because their assailants are officers of other agencies. Plaintiff argues that there is no rational basis and cites to Tenth Circuit case law. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1114 (10th Cir. 2008). County Defendants have not asserted that there was any rational reason to provide less protection to domestic violence victims whose perpetrators are officers than to other domestic violence victims, apparently conceding the point. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1114 (10th Cir. 2008 ("But [Defendant] has not asserted, and we cannot discern on this record, a

rational reason to provide less protection to lesbian victims of domestic violence than to heterosexual domestic violence victims.").

**B.      Second Prong of Qualified Immunity: Clearly Established Law.**

Because the Court found that Sgt. Gomez violated her Ms. Bascom's equal protection rights, the Court next addresses whether the law was clearly established – as to Sgt. Gomez only. "The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

Plaintiff argues that it was clearly established that an officer may not provide less police protection to a victim of domestic violence whose perpetrator was an officer compared to other domestic violence victims.

The Tenth Circuit found in *Price-Cornelison* found that *Watson* clearly established that depriving sub-classes of domestic violence victims less protection than other domestic violence victims would deprive them of equal protection of the law. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1114–15 (10th Cir. 2008), *citing to Watson*, 857 F.2d at 694. Therefore, the Court agrees that under the specific facts of this case, it was clearly established that Sgt. Gomez may

not decline to investigate or provide less police protection to a victim of domestic violence *whose assailant is an officer* compared to other domestic violence victims.

### C. <u>Genuine Disputes of Fact Defeat Sgt. Gomez's Summary Judgment Motion</u>.

Finally, because Plaintiff overcame her burden on qualified immunity, the Court must next address Sgt. Gomez's Motion for Summary judgment on the equal protection claim under normal summary judgment standards. Herein, the Court applies normal summary judgment principles and considers all facts asserted. *See* Fed. R. Civ. P. 56(a).

Sgt. Gomez seeks summary judgment on the Equal Protection claim on the basis that he did not have probable cause to arrest Cpt. Contreras. The Court concludes that Plaintiff has also shown there is a genuine dispute of material fact as to what Sgt. Gomez knew and when, and whether he knew enough to sign an arrest warrant for Cpt. Contreras based on any crimes against Ms. Bascom. Specifically, Plaintiff presented evidence and undisputed facts that although Sgt. Gomez testified he had not contacted anyone with SCPD, he had in fact called Chief Reynolds on April 21, 2016. Moreover, it appears that although certain matters were responded to by SCPD, they were ultimately referred out to the Grant County Defendants. Therefore, there is a genuine dispute of material fact as to whether Sgt. Gomez had knowledge of the relevant facts to support a warrantless arrest or a probable cause affidavit (without seeking the consent of the district cause).

For example, Defendants' sole argument against summary judgment is that they did not have probable cause to arrest Cpt. Contreras based on what they knew at the time, and that there were no exigent circumstances. At least for Sgt. Gomez, the facts necessary to make that determination are in genuine dispute.

Furthermore, even if the Court were to conclude that a comparison needed to be made to similarly situated domestic violence victims, the Court finds that the facts necessary to make such comparison are in genuine dispute.

## II.     Count III and V: Fourth Amendment Unlawful Entry against Individual County Defendants and Grant County.

### A.     Clearly Established Law as to Individual County Defendants for Count III and V.

Plaintiff alleges that the individual County Defendants violated her Fourth Amendment right against unlawful entry by allowing Cpt. Contreras to enter her home and refusing her request to remove Cpt. Contreras from her home.  In part, Plaintiff alleges that the County Defendants aided Cpt. Contreras in trespassing in her property.

"The Fourth Amendment prohibition against unreasonable search and seizure is implicated when there is some meaningful interference with an individual's possessory interests in [her] property." *Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) (citation omitted). Generally, a state actor cannot be held liable for private action.  *Id.*  "Mere approval or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Id.* (quoting *Blum*, 457 U.S. at 1004-05).

In its discretion, the Court addresses the clearly established prong of qualified immunity. The Court concludes that Plaintiff has failed to satisfy her burden to show that the officers violated clearly established law.   Although at this stage the Court generally must take Plaintiff's properly supported version of the facts as true, the Court need not rely on Plaintiff's version of the facts when lapel video is contrary.  *Thomas v. Durastanti*, 607 F.3d 655, 664–65 (10th Cir. 2010), *citing Scott,* 550 U.S. at 379–81, 127 S.Ct. 1769.  Moreover, the Court finds it appropriate

to rely on Sgt. Gomez's and Det. Arellano's lapel videos because Plaintiff relies on it, includes in the record  transcripts of the lapel videos, and highlights the portions of the transcript relevant here.  *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (even on qualified immunity, "if the nonmoving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it," then we "should not adopt that version of the facts.").

Under the clearly established prong, Plaintiff bears the heavy burden of showing that "the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).  Generally, the clearly established prong is analyzed from the perspective of a "reasonable police officer in the same circumstance… and possessing the same knowledge as the officer in question… could have reasonably believed."  *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014).

Here, it was objectively reasonable for the officers to believe that they did not have authority to remove Cpt. Contreras from the house.  They received contradictory evidence on his residence status.  On the lapel video Cpt. Contreras stated that he lived in the house.[5] He also stated that the house was owned by Ms. Bascom's father's business and not by Ms. Bascom. There is nothing in the record to indicate that Ms. Bascom's father had sought to remove him from the house.  Ms. Bascom stated that she changed her locks the month before and he does not have keys to the house.  She also stated that he had not been living there for a month.

Moreover, unlike in *Marcus*, Plaintiff has not shown that she had the legal right to remove him from the house at that moment. *Marcus v. McCollum,* 394 F.3d 813, 818 (10th Cir. 2004) (under Oklahoma law, debtor had right to tell creditor to leave car alone, which must be obeyed by creditor.  Defendant officers interfered with that right by threatening debtor if they

---

[5] This statement was supported by his driver's license, which showed he lived at the residence, and dispatch, which stated his home address was the residence in question.

stopped repossession). Therefore, Plaintiff has failed to make any showing under either Federal or New Mexico law that the officers' understanding that they could not remove a resident under these circumstances was flawed, much less objectively unreasonable.

This conclusion is the same for Det. Arellano, who was not at the scene of the alleged trespass. However, based on Ms. Bascom's account at the shelter, he determined that Cpt. Contreras had established residency. In fact, she told him that she and Cpt. Contreras shared a residence.

The two cases cited by Plaintiff for clearly established law are not factually on point. *Marcus* involved a repossession case, in which a creditor used self-help methods to take a debtor's property. The defendant-officer had threatened to arrest the debtor if he interfered with the repossession. In that case, the creditor had violated Oklahoma law. *Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004). *Price-Cornelison* involved a domestic dispute, and the officer threatened to arrest the plaintiff if she interfered with her ex-partner's attempt to take personal property from the house. *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1115–16 (10th Cir. 2008)

That is not the case here. This is not a case involving the seizure of personal property. Moreover, there is nothing in Plaintiff's version of facts that indicate the individual officers took action to help Cpt. Contreras enter her house, nor did they threaten Ms. Bascom to let Cpt. Contreras stay in the house. The individual County Defendants did nothing to aid Cpt. Contreras. The individual officers simply recognized there was disputed evidence as to his claim to residency, investigated and found evidence that he was a resident there, and refused to remove him. . The officers told Ms. Bascom how to obtain a restraining order and get him removed from her home.

Therefore, the Court concludes that Plaintiff failed in her burden of producing case law that shows under the specific facts here, they violated clearly established law. The Court finds that the individual County Defendants' belief that they could not immediately remove Cpt. Contreras under these circumstances was objectively reasonable.

**B.   Counts III and V: *Monell* claim against Grant County.**

Having dismissed Counts III and V against the officers, the *Monell* claims (Counts III and V) against Grant County remain. Plaintiff asserts that Grant County's policy that an individual establishes residency in a dwelling if he or she resides there for thirty days, and must be civilly evicted absent any exigent circumstances, violates the constitution. The Court notes that neither party has presented any evidence or case law either way on the propriety of Grant County's thirty-day residency policy. Moreover, whether or not the Grant County policy is wrong under New Mexico law, neither party has made a showing that this policy would amount to a constitutional violation. The Court will issue an order to show cause to the parties on how they wish to proceed on Count III and V as to Grant County. *Hinton v. City of Elwood*, 997 F.2d 774, 782-83 (10th Cir. 1993), *citing Medina v. City and County of Denver,* 960 F.2d 1493, 1499–1500 (10th Cir.1992) (granting qualified immunity on clearly established prong does not relieve local government of *Monell* claim).

**III.   Count XI for Negligence Resulting in Battery.**

On the state law claims, the Court applies normal summary judgment principles. *See* Fed. R. Civ. P. 56(a). Plaintiff alleges that the County Defendants are liable under the NMTCA for negligence that caused an intentional tort. Defendants appear to argue that the officers were not negligent, because they did not have probable cause to arrest Cpt. Contreras.

The New Mexico Tort Claims Act preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); *College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd.*, U.S. 527, 666, 675 (1999) (a state's sovereign immunity precludes suits against a state or its employees except as specified where immunity has been waived).

The NMTCA permits a negligence action against a police officer, but "only to the extent that [the] . . . officer's negligence is alleged to have caused a third party to commit one of the . . . intentional torts" listed in N.M. Stat. Ann. § 41-4-12, such as assault or battery. *Lessen v. City of Albuquerque*, 187 P.3d 179, 187 (N.M. Ct. App. 2008). New Mexico has even allowed claims against an officer for negligently responding to a call requesting assistance, which caused the victim to be harmed by a third party. *Schear v. Bd. Of County Comm'rs,* 101 N.M. 671 (1984) (officer's alleged negligence in failing to respond to a call requesting assistance with a crime in progress that caused plaintiff to be raped by a third party, i.e., a battery); *see also Methola v. Eddy County*, 95 N.M. 329 (1980) (officers whose alleged negligence proximately had caused third-party inmates to commit an assault on plaintiffs); *Schear v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, 1984-NMSC-079, ¶ 23, 101 N.M. 671, 677, 687 P.2d 728, 734 ("accepting the allegations in the complaint as true, it shall be for the jury demanded in this case to determine whether the duty to investigate, imposed by Section 29–1–1, was breached and, if so, whether such conduct was negligence that proximately caused petitioner's injuries.").

"[A] law enforcement officer has the duty in any activity actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified

officer in light of the nature of what is being done.  *Cross v. City of Clovis*, 755 P.2d 589, 591 (N.M. 1988).

As explained above, there is a genuine dispute of fact as to what the Sgt. Gomez knew and whether they knew enough to have probable cause to arrest Cpt. Contreras.  This is the same for the other officers as well.  The facts necessary to determine whether they breached their duty to investigate also appears to be in genuine dispute.  Defendants present evidence and facts indicating that they did not have probable cause to arrest.  Plaintiff disputes those facts, and presents facts indicating that the officers actually had knowledge of facts that would indicate they had probable cause to arrest Cpt. Contreras and that he was a danger to Ms. Bascom.  Because of these disputes of fact, the Court is unable to determine whether the County Defendants' actions fell below the appropriate standard of care.

**IV.**     **Counts XII – Deprivation of Statutory Rights Resulting in Wrongful Death.**

Plaintiff alleges that Defendants breached their duty arising from NMSA § 29-1-1 by failing to investigate and arrest Cpt. Contreras.[6]  Defendants' do not contest the applicable law, but solely argue that the facts are insufficient to show they (1) improperly investigated the alleged crimes and (2) or that there were exigent circumstances to warrant an arrest of Cpt. Contreras.

NMSA § 29-1-1 places a statutory duty on officers to investigate alleged violations of the law.  *See Schear v. Bd. Of Cty Comm'rs*, 687 P.2d 728, 729 (N.M. 1984).  As noted above, the Court finds there are genuine disputes of material fact as to what the officers knew, making it impossible for the Court to determine whether they breached their duty to investigate.  Moreover, it is unclear from the record whether they were at all going to pursue an arrest warrant

---

[6] To the extent Count XII includes other statutory provisions, Defendants did not challenge them.  The Court declines to address arguments that Defendants did not raise.

based on Ms. Bascom's allegations. County Defendants cite to deposition testimony, but that appears to involve possible charges against Cpt. Contreras for assault or harassment of Dr. Nelson.

Otherwise, there is certainly sufficient evidence to defeat summary judgment as to whether the individual County Defendants inadequately investigated this case. Had the County Defendants simply asked Ms. Bascom questions about whether she was previously battered (which they knew), or how often Cpt. Contreras was following her, Ms. Bascom's death may not have happened.

## V.    Count XIII: Loss of Consortium Claim Survives.

The loss of consortium claim is derivate of the above state law claims. Because the state law claims above survive summary judgment, the loss of consortium claim survives as well.

## CONCLUSION

Plaintiff has met her qualified immunity burden on the equal protection claim against Sgt. Gomez for **Count VII** (Equal Protection), but Defendants Deputy Villegas and Det. Arellano are entitled to qualified immunity. Moreover, **Counts III and V** and are dismissed as to the individual County Defendants, but not as to Grant County. Finally, the state law claims remain. Therefore, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS THEREFORE ORDERED** that **Count VII** against Deputy Villegas and Det. Arellano is **DISMISSED** but remains as to Sgt. Gomez.

**IT IS FURTHER ORDERED** that **Count III** as to Sgt. Gomez and Deputy Villegas is **DISMISSED**, but remains as to Grant County.

**IT IS FINALLY ORDERED** that **Count V** is **DISMISSED** as to Det. Arellano, but not as to Grant County.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE